IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

LAURIE LYNN LEE, )
 )
    Plaintiff, )
 ) Civil Action No. 7:15CV00342
v. )
 ) **MEMORANDUM OPINION**
AETNA LIFE INSURANCE )
COMPANY, INC., ) By: Hon. Glen E. Conrad
 ) Chief United States District Judge
    Defendant. )

In this action, brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, plaintiff Laurie Lynn Lee claims that defendant Aetna Life Insurance Company, Inc. ("Aetna") wrongfully denied her claim for long-term disability benefits under an employee welfare benefit plan (the "Plan). The case is presently before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, the court will grant defendant's motion and deny plaintiff's motion.

**Factual and Procedural Background**

Lee previously worked as a Business Manager for iHeartMedia, Inc., formally known as Clear Channel Communications, Inc. ("iHeartMedia"). As an employee, Lee participated in the Plan, which is governed by ERISA and provides short-term and long-term disability benefits. iHearthMedia sponsors and maintains the Plan. A group life and accident health insurance policy issued by Aetna funds it. Under the terms of the Plan, Aenta has "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits. . . ." Administrative Record ("AR") 1124.

The Plan provides the following "Test for Disability":

> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
> - You cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition; and
> - Your earnings are 80% or less of your adjusted predisability earnings.
>
> After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury, or disabling pregnancy-related condition.

AR 1138 (emphasis omitted). "Material duties" are defined as "[d]uties that: Are normally needed for the performance of your own occupation; and Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty." AR 1154. "Own occupation" means "[t]he occupation that you are routinely performing when your period of disability begins" and is specifically "viewed as it is normally performed in the national economy instead of how it is performed: For your specific employer; or At your location or work site, and Without regard to your specific reporting relationship." Id. It is undisputed that Lee's occupation is sedentary in nature and that driving is not a material duty. Def.'s Br. in Supp. 5, Docket No. 17; Pl.'s Br. in Supp. 3, Docket No. 15.

Lee was diagnosed with spinal instability and diskogenic back pain. She underwent surgery on September 20, 2012. AR 180. Due to her surgery, she applied for, and received, the maximum short-term disability benefits. AR 111. On December 20, 2012, Dr. Scott Jamison, Lee's internist, reported that Lee could not be up for more than three hours at a time and could not drive. He also released her to at-home work for five hours a day, five days a week. AR 137. iHeartMedia allowed Lee to work from home, and Aetna approved Lee's claim for partial long-term disability benefits. On January 21, 2013, Dr. Jamison noted that Lee was "able to increase her work load to 8 hours a day over [the] next two weeks." AR 983. Because Lee was able to

2

return to a full-time schedule when working from home, Aenta terminated Lee's long-term disability benefits effective January 21, 2013. AR 219.

Approximately six months later, iHeartMedia informed Lee that they would no longer accommodate her working full-time from home after July 15, 2013. Lee again sought long-term disability benefits. Upon a review of Lee's claim, Aetna requested a Capabilities and Limitations Worksheet to be completed by Dr. Jamison, which he did on July 25, 2013. In the Capabilities and Limitations Worksheet, Dr. Jamison indicated that Lee could occasionally kneel, lift, pull, push, reach above shoulder height, reach forward, and carry. AR 531-32. Lee could frequently sit and stand and walk but could not stoop. Id. She was approved for head and neck movements, and lifting frequently up to ten pounds. Id. The Worksheet noted that Lee could not drive for prolonged periods and that she had to change positions every fifteen minutes. Id. Aetna found driving not to be a part of Lee's job duties and concluded that the remaining limitations, including her "restriction of changing position every 15-20 minutes while sitting," are "normally accommodated." AR 384-86. On October 3, 2013, Aetna notified Lee that her claim would be denied. Id.

Lee appealed, asserting that she could only work from home. Working from home allowed her to lie down and ease the swelling in her leg as well as take breaks to stand and walk because prolonged sitting caused her pain. AR 265. Lee claimed that these limitations extended her workday, which sometimes spanned from 5:00 a.m. to 11:00 p.m. AR 537. While awaiting Aetna's determination of her appeal, Lee continued to follow up with Dr. Jamison, seeing him on October 3, 2013 and October 16, 2013. At these follow up visits, Dr. Jamison noted that Lee required regular laying down to reduce swelling in her leg; that Lee had to change her position by standing or walking to relieve pain every five to ten minutes; that Lee may have received the

3

maximum benefit of her recovery; that Lee was unable to maintain meaningful work; that Lee was "severely limited"; and that Lee required disability. AR 884-887. In the records of these visits, Dr. Jamison did not include a comprehensive history and physical examination indicating functional deficits. AR 884-887, 399.

As part of the appeal, Aetna requested an independent physician "peer review." Dr. Martin Mendelssohn, M.D., who is board certified in orthopedic surgery, completed this review on November 25, 2013. AR 429-34. In his report, Dr. Mendelssohn summarized the medical records in Lee's case file, including treatment notes from Dr. Jamison and Lee's orthopedic surgeon, Dr. Jonathan Carmouche. AR 429-30. Dr. Mendlessohn, however, was not able to speak with Dr. Jamison. Id. Dr. Mendlessohn concluded that, "based on the lack of any functional or neurological deficits and progressive healing of the claimant's fusion, the medical evidence does not substantiate a functional impairment for the claimant from her regular unrestricted occupation." AR 433. Accordingly, Dr. Mendelssohn opined that "the claimant could return to her regular unrestricted occupation . . . as of 7/15/2013 through 11/21/13 as a business manager, which is a sedentary occupation, without the need for any accommodations." AR 434. After Dr. Mendlessohn completed his review, Dr. Jamison was afforded five days to respond and note the portions of the reviewer's conclusions that he agreed and disagreed with. AR 397. Dr. Jamison did not respond. AR 399.

On December 12, 2013, Aetna upheld its denial of Lee's claim for long-term disability benefits, stating that there was a lack of medical evidence supporting a functional impairment that would have prevented Lee from performing the material duties of her own occupation. AR 399. Specifically, it its letter to Lee, Aetna cited to several pieces of the medical record:

    (1) A progress report dated September 23, 2013 observing no signs of complications from Lee's September 20, 2012 surgery;

4

(2) Records from October 5, 2012 noting no complications and no neurological deficits and stating that Lee was able to return to part-time work from home;
(3) Records from November 2, 2012 in which Lee's gait was described as stable and her neurological evaluation normal. These records noted that Lee complained of pain in her left leg;
(4) A progress note from November 30, 2012 observing that Lee was recovering slowly;
(5) Records from a January 21, 2013 visit with Dr. Jamison that included no clinical examination findings of neurological deficits;
(6) A March 26, 2013 progress note from Dr. Carmouche in which Dr. Carmouche again documented that Lee had a stable gait and balanced standing posture;
(7) The Capabilities and Limitations Worksheet from Dr. Jamison dated July 25, 2013; and
(8) Dr. Jamison's notes from his October 3, 2013 reevaluation of Lee.

As to the October 3, 2013 notes, Aetna specifically stated that these records did not include a comprehensive history and physical examination indicating functional deficits. Aetna also noted that it had requested a peer review from Dr. Mendelssohn and that Dr. Jamison had not responded to requests to evaluate the peer review. AR 399. On July 28, 2014, Lee was awarded social security benefits with an onset date of July 14, 2013.

Having exhausted her administrative remedies, Lee filed this instant action on June 23, 2015. The parties subsequently filed cross-motions for summary judgment. Lee argues that summary judgment should be granted because Aenta's denial of benefits was not the result of a reasoned and principled decision-making process supported by substantial evidence. In response, Aetna contends that its decision should be upheld. The motions have been fully briefed and are ripe for review.

## Standard of Review

The parties agree that the Plan grants Aetna "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits. . . ." AR 1124; Def.'s Br. in Supp. 3; Pl.'s Reply in Supp. 2, Docket No. 18. Accordingly, the court reviews Aetna's decision for abuse of discretion. See DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860,

5

869 (4th Cir. 2011). Under this standard, an administrator's decision will not be disturbed unless it is unreasonable. Id. To be reasonable, the decision must be "the result of a deliberate principled reasoning process" and be "supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (internal quotation marks omitted). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984) (internal quotation marks omitted). In assessing the existence of substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [administrator]." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); see also Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, 925 F. Supp. 2d 700, 716 (D. Md. 2012) ("The court does not reweigh the evidence."). Instead, the court inquires as to whether the administrator considered all relevant evidence and sufficiently explained the weight accorded thereto. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997); Love v. Nat'l City Corp. Welfare Benefits Plan, 574 F.3d 392, 395 (7th Cir. 2009). However, "[i]f the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation." Gorski v. ITT Long Term Disability Plan for Salaried Employees, 314 F. App'x 540, 548 (4th Cir. 2008) (internal citations omitted); see also DuPerry, 632 F.3d at 875-876; Elliott v. Sara Lee Corp., 190 F.3d 601, 609 (4th Cir. 1999) (noting that the court may either reverse the decision or remand it to the administrator for further review when the administrator has abused its discretion).

In Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335 (4th Cir. 2000), the Fourth Circuit set forth eight nonexclusive factors to be considered by courts in

reviewing a plan administrator's decision for reasonableness:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. at 343-343. These factors continue to guide the court's abuse-of-discretion review under ERISA. See DuPerry, 632 F.3d at 869.

## Discussion

### I. Denial of Benefits

Lee makes five arguments as to why Aetna's denial of benefits was not the result of reasoned decision-making supported by substantial evidence: (1) that Aetna did not take into consideration Dr. Jamison's repeated findings that Lee was "unable to drive greater than 10 minutes due to severe pain"; (2) that Aetna recharacterized Lee's limitation, stating that she had to change positions every fifteen to twenty minutes, when on October 3, 2013 Dr. Jamison noted that Lee had to stand or walk every five to ten minutes to relieve pain; (3) that Aetna did not address Lee's claim that she needed to lie down to relieve the swelling in her leg several times per day and that doing so prolonged her work day; (4) that Aetna failed to account for Dr. Jamison's October 3, 2013 observations that he did not expect Lee to be able to return to work; and (5) that the court should consider that Lee was retroactively awarded social security disability benefits. Lee also argues that the court should consider Aetna's conflict of interest as Aetna both evaluates and pays benefit claims.

Conversely, Aetna argues that the court should not give its conflict of interest any greater weight than the other factors, as Lee has not proffered any evidence suggesting that a conflict of

7

interest affected the contested decision. Aetna further asserts that the court should not consider Lee's retroactive award of social security disability benefits, as Lee did not receive the award until July 28, 2014, several months after Aetna made its determination of Lee's appeal. Last, Aetna maintains that consideration of the Booth factors warrants granting of its motion for summary judgment.

When a plan administrator both evaluates and pays disability benefits, this dual role creates a conflict of interest. Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008). However, absent evidence tending to show that the administrator's dual role affected its decision making, the administrator's conflict of interest is "only 'one factor among many'" that the district court reviews "in determining the reasonableness of the administrator's decision." Champion, 550 F.3d at 362 (quoting Metropolitan Life Ins. v. Glenn, 554 U.S. 105, 107 (2008)); Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir. 2009) ("[A] conflict of interest becomes just one of the 'several, often case-specific, factors' to be weighed together in determining whether the administrator abused its discretion.") (quoting Glenn, 554 U.S. at 107). Here, Lee has not presented evidence suggesting that Aetna's structural conflict of interest affected the decision to deny Lee long-term disability benefits. Accordingly, the court will consider the conflict as one of the many applicable factors without any specific greater emphasis. Champion, 550 F.3d at 359 (noting that any conflict of interest is accounted for by "considering the relevant factors, as identified in Booth").

While "it is well-established in the Fourth Circuit that the [Social Security Administration's] determination of someone's disability status is evidence that can be considered by a court ruling on the denial or termination of disability benefits," the Social Security Administration's decision is not determinative. Turner v. Ret. and Benefit Plans Comm. Robert

8

Case 7:15-cv-00342-GEC   Document 19   Filed 01/06/17   Page 8 of 14   Pageid#: 1285

Bosch Corp., 585 F. Supp. 2d 692, 705 (D.S.C. 2007) (citing sources). That the claimant is entitled to social security disability benefits does not determine whether she is entitled to long-term disability under a disability plan governed by ERISA because, unlike social security disability cases, "ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not." White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 254 (4th Cir. 2007). Therefore, although a claimant has been awarded social security disability benefits, an administrator may deny benefits under ERISA upon presenting grounds that "a reasoning mind would accept as sufficient" for such a decision. Id.

The court next turns to whether consideration of the factors set forth in Booth necessitates a determination that Aetna abused its discretion. Applying these factors, the court agrees with Aetna that its decision was the product of reasoned decision-making based on substantial evidence. In reaching this decision, the court focuses primarily on the language of the Plan, the sufficiency of the evidence upon which Aetna based its conclusion, and the reasonableness of Aetna's decision-making process.

The court begins with the language of the Plan. In order to meet the test for disability, the Plan requires that the claimant "cannot perform the material duties of [his or her] own occupation solely because of an illness, injury or disabling pregnancy-related condition; and [his or her] earnings are 80% or less of [his or her] adjusted predisability earnings." AR 1138. The Plan defines the claimant's "own occupation" as "[t]he occupation that [he or she is] routinely performing when [the] period of disability begins" and specifies that the claimant's occupation "will be viewed as it is normally performed in the national economy" instead of how it is performed for the individual's employer, at the individual's location, and without regard to the

9

individual's specific reporting relationship. Id. "Material duties" are those "normally needed for the performance of [the individual's] own occupation; and cannot be reasonably left out or changed." Thus, Lee's case turned on the question of whether she was able to perform the material duties of sedentary work as viewed in the national economy. See DuPerry, 632 F.3d at 871 (reviewing an adverse decision for abuse of discretion and noting that "DuPerry's case turned on the question of whether she was in fact unable to perform the material duties of her job.").

The court interprets ERISA plans under ordinary principles of contract law, giving meaning to the plan's plain language in its ordinary sense. Wheeler v. Dynamic Engineering, Inc., 62 F.3d 634, 638 (4th Cir. 1995). Here, the Plan is unambiguous: the test for disability is evaluated in relation to the claimant's own occupation without regard for, among other things, the claimant's individual location. AR 1154. Lee had been performing the material duties of her job, full-time, from home for the six months prior to her request for long-term disability benefits. Adhering to the common and ordinary language of the Plan, the court believes Aetna's determination that Lee could not sustain a claim for disability benefits when she could perform the material duties of her job at home but not at iHeartMedia's work site to be reasonable. AR 303; see Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 56 (4th Cir. 1992) ("ERISA . . . places great emphasis upon adherence to the written provisions in an employee benefit plan.").

Next, the court reviews the adequacy of the materials considered to make the decision and the degree to which they support it. Booth, 201 F.3d at 343. Here, Aetna relied upon progress notes from Lee's treating physicians as well as Dr. Mendelssohn's peer review, as it explained in its letter affirming the denial of benefits. Aside from the October 3, 2016 records, the progress notes suggested no complications with the surgery, and that Lee's gait was stable.

10

Notably, there were no clinical findings indicating any neurological deficits. Dr. Jamison's July 25, 2013 Capabilities and Limitations Worksheet indicated that Lee could occasionally kneel, lift, pull, push, reach above shoulder height, reach forward, and carry, that she could frequently sit and stand and walk but could not stoop, that she was approved for head and neck movements and lifting frequently up to ten pounds, that Lee could not drive for prolonged periods, and that Lee had to change positions every fifteen minutes. AR 531. Aetna determined that this information "provided from Dr. Jamison [did] not support a functional impairment." AR 399. Aetna also found that Lee's limitation of changing position every "15-20 minutes" while sitting "is normally accommodated." AR 386.

Lee asserts that Aetna recharacterized her limitation to require repositioning every fifteen to twenty minutes when Dr. Jamison noted, on October 3, 2012, that she had to reposition every five to ten minutes. Lee also argues that Aetna did not consider that Lee's driving limitation also meant that she had a similar sitting limitation. However, Dr. Jamison clearly noted that Lee had to reposition every fifteen minutes on July 25, 2013, and then on October 3, 2013, that Lee had to reposition every five to ten minutes. AR 531. Similarly, while Dr. Jamison indicated that Lee could not drive for prolonged periods of time, he also reported that Lee could "frequently sit." Id. Accordingly, Aetna relied upon the July 25, 2013 Worksheet, in addition to previous progress notes and Dr. Mendelssohn's peer review, in determining that Lee was not disabled as defined by the Plan. The court believes that such reliance was reasonable as this evidence was of a type that "a reasoning mind would accept as sufficient to support a particular conclusion." LeFebre v. Westinghouse Elec. Corp., 747 F.2d at 208.

The court thus considers whether Aetna's decision was reasoned and principled. Booth, 201 F.3d at 343. When "a reasoning mind would accept [the evidence relied upon by the plan

11

administrator] as sufficient to support a particular conclusion," it is not an abuse of discretion for a plan administrator to deny benefits in the face of conflicting evidence. LeFebre, 747 F.2d at 208. However, an administrator "abuses its discretion when it fails to address conflicting evidence." Helton v. AT&T, Inc., 798 F.3d 343, 359 (4th Cir. 2013). In those instances, it cannot be said that the administrator engaged in "a reasoned and principled decision-making process, as required by the fifth Booth factor." Id.; see also Donovan v. Eaton Corp., 462 F.3d 321, 329 (4th Cir. 2006) (finding an abuse of discretion where there was a "wholesale disregard" of evidence in the claimant's favor); Harris v. Holland, 87 F. App'x 851, 859 (4th Cir. 2004) (holding that the trustees of the pension plan abused their discretion in denying plaintiff's claim for disability benefits, where they "apparently gave no consideration" to an opinion provided by a treating physician, which directly addressed one of the issues in dispute). Here, plaintiff argues that Aetna failed to address several pieces of conflicting evidence. The court cannot agree.

Unlike instances in which courts have found an administrator abused its discretion, Aetna did not engage in a "wholesale disregard" of Lee's supporting evidence. Donovan v. Eaton Corp. Long Term Disability Plan, 462 F.3d 321, 329 (4th Cir. 2006); cf. Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 672 (6th Cir. 2006) (finding an abuse of discretion in a case where the administrator "offered no explanation for its resolution of [an inconsistency in the evidence] or, for that matter, whether it was given any consideration at all"). Aetna noted that Lee could not drive more than ten minutes, but explained that a vocational review revealed that driving was not a part of Lee's job duties. AR 386, 556-557. Similarly, Aetna acknowledged that Lee continued to complain of pain and that, on October 3, 2013, Dr. Jamison continued to find Lee symptomatic. In making these observations, Aenta was addressing the conflicting evidence before it. More importantly, Aetna pointed to what it did rely upon, the July 25, 2013

Capabilities and Limitations Worksheet and previous progress notes, and explained why it did not credit Dr. Jamison's opinions from October 3, 2013: because "[a] comprehensive history and physical examination indicating functional neurological deficits was not provided." AR 399; see Harris, 87 F. App'x at 859 (noting that the court cannot "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation. . . .").

From this record, the court cannot find that Aetna failed to engage in a reasoned decision-making process. Its decision was based on evaluation of Lee's progress notes and medical records, upon a Capabilities and Limitation Worksheet completed by Lee's treating physician, a vocational evaluation, and by an independent review of the record. See Hilton v. UNUM Life Ins. Co. of Am., 967 F. Supp. 2d 1114, 1124 (E.D. Va. 2013) ("A principled reasoning process can be determined by consideration of the complete record, reliance on independent medical evaluations, and assessment of the claimant's vocational capacity."). Aetna also addressed conflicting evidence and explained that, absent clinical examination findings indicating any neurological deficits, such evidence did not support a finding of a functional impairment that would have prevented Lee from performing the material duties of her own occupation. Therefore, because the court finds that Aetna did not abuse its discretion and relied upon substantial evidence, the court will grant Aetna's motion for summary judgment.

## II. Attorneys Fees & Costs

Lee also seeks reimbursement for her attorney's fees and costs incurred in the instant action. Pursuant to 29 U.S.C. § 1132(g)(1), a court may, in its discretion, allow reasonable attorney's fees and costs to either party. 29 U.S.C. § 1132(g)(1). To be eligible for an award, the party must achieve some degree of success on the merits. Hardt v. Reliance Standard Life Ins.

Co., 560 U.S. 242, 254 (2010). In the ERISA context, a party who obtains remand can be said to have some success on the merits. See Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan, No. WDQ-09-3239, 2011 WL 2601569, at *4-*9 (D. Md. June 28, 2011) (in concluding that a party may be entitled to fees and costs, the district court provided a detailed analysis of whether obtaining remand qualifies as some degree of success on the merits); W. Va. Highlands Conservatory v. Kempthorne, 569 F.3d 147, 152 (4th Cir. 2009) ("A party who obtains a remand order requiring an administrative agency to perform properly its regulatory duties has achieved some degree of success on the merits."). Here, the court has determined that Aetna did not abuse its discretion and will not remand the case. Lee has failed to demonstrate some degree of success on the merits, and her request for attorney's fees and costs will be denied.

## Conclusion

For the reasons stated, Aetna's motion for summary judgment will be granted and Lee's motion for summary judgment will be denied. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 6th day of January, 2017.

_____
Chief United States District Judge

14
Case 7:15-cv-00342-GEC   Document 19   Filed 01/06/17   Page 14 of 14   Pageid#: 1291